IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| RANDY MITCHELL, | : |
| Plaintiff, | : |
| vs. | : 5:06-cv-378 (CAR) |
| CHARLES GIBBS, | : |
| Defendant. | : |

## *ORDER ON THE REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE*

Before the Court is a Report and Recommendation for United States Magistrate Judge Claude W. Hicks, Jr., (Doc. 14) that recommends denying Defendant's Motion to Dismiss (Doc. 9). Defendant has filed an Objection and pursuant to 28 U.S.C. § 636(b)(1), the Court has made a de novo determination of the portions of the Recommendation to which Defendant objects. For the reasons explained herein, the Recommendation is **ACCEPTED**, and Defendant's Motion to Dismiss is **DENIED**.

### DISCUSSION

On May 1, 2006, while incarcerated at Hancock State Prison, Plaintiff was assaulted by his cellmate. Plaintiff alleges that prior to the attack he repeatedly advised Defendant that his cellmate had threatened to sexually assault him and that he feared for his safety. Therefore, Plaintiff filed suit against Defendant under 42 U.S.C. § 1983 alleging Defendant was deliberately indifferent to a known risk to his safety. In lieu of immediately filing an answer to Plaintiff's Complaint, Defendant moved to dismiss Plaintiff's claim on three

separate grounds: (1) Plaintiff has accumulated three "strikes" under the Prison Litigation Reform Act ("PLRA") and is thus not entitled to proceed in forma pauperis; (2) Plaintiff failed to state a claim for deliberate indifference; and (3) Defendant is entitled to qualified immunity.

The Magistrate Judge thoroughly examined each of the cases Defendant alleges should count as a "strike" under the PLRA and determined only two of the cases were dismissed as frivolous and thus qualified as "strikes." In addition, the Magistrate Judge found that Plaintiff's Complaint adequately alleges a deliberate indifference claim; however, the Magistrate Judge did not address Defendant's affirmative defense of qualified immunity. Defendant then filed an Objection to the Recommendation asserting three separate arguments: (1) one of the cases previously rejected as a strike by the Magistrate Judge should be classified as an abuse of process strike; (2) Plaintiff failed to state a deliberate indifference claim; and (3) Defendant is entitled to qualified immunity. The Court will address each argument in turn.

## I. "Strikes" under the PLRA

Section 1915(g) of the Prisoner Litigation Reform Act, commonly known as the "three strikes" provision, prevents a prisoner from proceeding in forma pauperis if the prisoner "has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . ." 28 U.S.C. § 1915(g) (2006). The Magistrate examinied the issue and concluded that Plaintiff has accumulated only two "strikes" against him. Defendant argues <u>Mitchelle v. Akintobi</u>, 5:02-cv-238, should also count as a "strike."

In Mitchelle v. Akintobi, the United States Court of Appeals for the Eleventh Circuit granted Plaintiff's request to voluntary dismiss his appeal. Defendant argues that "the only reason Plaintiff requested that his appeal be dismissed was because he had been denied IFP status for the appeal." Therefore, according to Defendant, Plaintiff's voluntary dismissal is tantamount to an abuse of process dismissal and should count as a "strike." The Court does not agree. Even assuming voluntarily dismissing an appeal for the reasons alleged by Defendant could be classified as an abuse of process dismissal, Defendant has offered no evidence Plaintiff voluntarily dismissed his appeal for that reason. Therefore, the Court declines to count Mitchelle v. Akintobi as Plaintiff's third "strike."

## II. Failure to State a Deliberate Indifference Claim

Prison officials clearly have a duty to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 833 (1994) (citation omitted). Nevertheless, not every injury "suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834. To sustain a claim, the inmate must establish that the prison official in question both was aware that the inmate faced "a substantial risk of serious harm" and "disregard[ed] that risk by failing to take reasonable measures to abate it." Id. at 847.

Despite the explanation in the Recommendation, Defendant continues to argue that Plaintiff has failed to state a deliberate indifference claim. The Court does not agree. According to Plaintiff's version of the facts, Defendant was clearly aware that Plaintiff faced a substantial risk of serious harm from his cellmate, and Defendant disregarded that risk by failing to take any measures to abate it. Plaintiff not only told Defendant that Plaintiff's cellmate had repeatedly threatened to sexually assault him, but also that he feared for his

safety.  In addition, Defendant was present when Plaintiff "snitched out" his cellmate in his cellmate's presence.  Furthermore, Plaintiff's cellmate had been placed in segregation due to two separate disciplinary incidents and became physically agitated when Defendant first introduced Plaintiff into the cell.  Yet, despite repeated attempts by Plaintiff to secure protection, Defendant wholly disregarded the risk Plaintiff's cellmate posed Plaintiff.

### III. Qualified Immunity

Qualified immunity offers complete protection for governmental officials sued in their individual capacities if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  To receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  Wood v. City of Lakeland, 203 F.3d 1288, 1291 (11th Cir. 2000).  "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the Plaintiff to show that qualified immunity is not appropriate."  Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).  The Supreme Court has set forth a two-part test for use in determining whether qualified immunity exists.  "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation."  Hope v. Pelzer, 536 U.S. 730 (2002) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  If a constitutional right would have been violated under the plaintiff's version of the facts, "the next, sequential step is to ask whether the right was clearly established."  Saucier, 533 U.S. at 201; see also Lee, 284 F.3d at 1194.

In this case, the facts as alleged by Plaintiff clearly establish Defendant was exercising his discretionary authority as a prison official, namely supervising inmates, when the

allegedly unlawful acts took place. Further, whether Plaintiff's version of events establish a constitutional violation has already been addressed by the Court in connection with Defendants argument that Plaintiff failed to state a claim. Therefore, having found Plaintiff has sufficiently alleged a constitutional violation, the Court must now determine whether preexisting law clearly established that Defendants conduct was unlawful.

The United States Supreme Court has acknowledged that "general statements of the law are not inherently incapable of giving fair and clear warning." U.S. v. Lanier, 520 U.S.259, 271 (1997). Thus, "preexisting case law, tied to the precise facts, is not in every situation essential to establish clearly the law applying to the circumstances facing a public official so that a reasonable official would be put on fair and clear notice that specific conduct would be unlawful in the faced, specific circumstances." Marsh v. Butler County, 268 F.3d 1014, 1032 n.9 (11th Cir. 2001). "A general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'" Lanier, 520 U.S. at 271 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

In the context of failure to protect cases like this case, "the eighth amendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection" when a prison official becomes "aware of a threat to an inmate's health and safety." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990). Although mere negligence does not justify liability, when a prison official is "deliberately indifferent to a known danger . . . their failure to intervene offend[s] 'evolving standards of decency' [and] ris[es] to the level of a constitutional tort." Id. (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).

Here, according to Plaintiff's version of the facts, Defendant refused to respond in any

way to protect Plaintiff's safety despite subjective knowledge of the fact that Plaintiff's cellmate had previously threatened Plaintiff and that Plaintiff feared for his safety. In view of the preexisting precedent imposing the duty to provide reasonable protection when a prison official learns of a threat to an inmate's safety, Defendant was clearly on notice that failing to respond in any manner to a known theat to Plaintiff's safety was unlawful.

## CONCLUSION

For the reasons expressed herein, the Recommendation is **ACCEPTED**, and Defendant's Motion to Dismiss is **DENIED**.

**SO ORDERED**, this 25th day of September, 2007.

S/ C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

SCS/ssh